**CONTINUATION IN SUPPORT OF
AN APPLICATION FOR A SEARCH WARRANT**

I, Trisha M.A. Kovac, a Special Agent with the Federal Bureau of Investigation (FBI), being duly sworn, depose and state as follows:

**INTRODUCTION**

1. I have been employed as a Special Agent ("SA") of the Federal Bureau of Investigation since February 1, 2009, and am currently assigned to the Detroit Division, Saint Joseph Resident Agency. While employed by the FBI, I have investigated federal criminal violations related to high technology or cybercrime, child exploitation, and child pornography, and regularly assist in the prosecution of these types of cases. I have received training in the area of child pornography and child exploitation and have had the opportunity to observe and review numerous examples of child pornography (as defined in 18 U.S.C. § 2256) in all forms of media including computer media. Moreover, I am a federal law enforcement officer who is engaged in enforcing the criminal laws, including coercion and enticement and traveler offenses. As a federal agent, I am authorized to investigate violations of laws of the United States and to execute warrants issued under the authority of the United States. My duties include the investigation of alleged violations of federal criminal laws, including matters involving violations of 18 U.S.C. §§ 2251 and 2252A (which make it illegal to produce, distribute, and possess child pornography in interstate commerce) and of 18 U.S.C. § 2423 (which makes it illegal to travel in interstate commerce with the intent to engage in illicit sexual activity).

2. Pursuant to the provisions of 18 U.S.C. § 2256(8), "child pornography" means a visual depiction, the production of which involves the use of a minor engaging in sexually explicit conduct, including but not limited to various simulated or actual sex acts, or the lascivious exhibition of the genitals or the pubic area.

3. I make this affidavit in support of an application for a search warrant for information that is stored at premises controlled by Google, a provider of electronic communications service and remote computing service headquartered at 1600 Amphitheatre Parkway, Mountain View, California 94043. The information to be searched is described in the following paragraphs and in Attachment A. This affidavit is made in support of an application for a search warrant under 18 U.S.C. § 2703(c)(1)(A) to require Google to disclose to the government copies of the information further described in Attachment B.

4. This affidavit is intended to show merely that there is sufficient probable cause for the requested warrant and does not set forth all of my knowledge about this matter.

5. Based on my training and experience and the facts as set forth in this affidavit, there is probable cause to believe that violations of 18 U.S.C. §§ 2251 and 2252A (which make it illegal to produce, distribute, and possess child pornography in interstate commerce) and of 18 U.S.C. § 2423 (which makes it illegal to travel in interstate commerce with the intent to engage in illicit sexual activity) have been committed by EDUARDO G. TORRES. There is also probable cause to search the information described in Attachment A for evidence of these crimes further described in Attachment B.

## FACTUAL BACKGROUND OF INVESTIGATION

6. On or around April 14, 2023, 11:30 a.m., a woman herein referred to as W.J. contacted the Berrien Springs Oronoko Township Police Department to report that her 12-year-old daughter, herein referred to as J.R., had left the house after W.J. went to work at 5:00 a.m. According to information obtained by J.R.'s sister from J.R.'s Snapchat account, J.R. went to meet a male in his twenties known only as "Jessy" to have sex in the woods for drugs. At the

time she went missing, J.R. was wearing a purple hoodie with neon-colored graphics of a skeleton hand holding a rose, and grey shorts.

7.  Afterward, J.R.'s sister found a video in J.R.'s Snapchat account, which is an account with username noregrets-cea1, that showed her having sex with a Hispanic male in the woods. The video had been sent to J.R.'s Snapchat account from account jessy225827[1] that morning and was shot from the perspective of the male subject. The video at first appeared to be in the "portrait" mode, and a male's face can be seen clearly. The camera view then flips, and a close-up of intercourse of a penis penetrating a vagina is visible. A female can be seen having her hair pulled while she is in the all-fours position from the male vantage point taking the video. J.R.'s sister identified the female as J.R. based upon her physical appearance and the shirt she was wearing in the video. A screen capture from the video showed the below subject:

---

[1] A preservation request was submitted to Snapchat for noregrets-cea1 and jessy225827 on April 18, 2023 and April 15, 2023, respectively.



8.      FBI was notified shortly after 4:00 pm that same day that J.R. was missing, and initiated a number of emergency disclosure requests to track her location and identify the subject. An emergency disclosure request submitted to Snapchat for jessy225827 returned **Google email account mtorres.12349@gmail.com** and IP logs returning to Verizon Wireless.[2]  A search in Accurint[3] for **mtorres.12349@gmail.com** returned a match for an individual identified as EDUARDO G. TORRES, DOB xx/xx/1997,[4] residential address in Waukegan, IL.  An emergency disclosure request submitted to Google, LLC for **mtorres.12349@gmail.com** requesting all

---

[2] Snapchat is a visual social media messaging application operated by Snap Inc., a company located in Santa Monica, California.

[3] Accurint is a public record database that law enforcement routinely uses in investigations.

[4] The full date of birth is known to me, but I have not included it to protect personal identifying information.

account information, including subscriber and location information, provided location data that indicated that the account had traveled from outside Chicago, Illinois to Berrien Springs, Michigan from 1 a.m. to 4 a.m., spent time in the vicinity of J.R.'s address, then traveled towards Benton Harbor, MI, leaving at approximately 4:00 p.m. eastern time to return to Chicago.  The timing of the Google location data shows that the subject was in the vicinity of either Berrien Springs or Eau Claire, Michigan at the time Snapchat user jessy225827 sent the video of sexual intercourse to J.R.'s Snapchat account.

9. Google returned the following subscriber information for **mtorres.12349@gmail.com:**

> Eddie Torres
> Waukegan, IL
> 224-406-4664

The street address in Waukegan provided by Google matched the street address in Accurint, and the same phone number was also linked to TORRES in Accurint.

10. The location history of the Google account was plotted onto maps by an FBI Special Agent from the Cellular Analysis Survey Team (CAST), which provided TORRES's travel history, as shown below:

Mtorres.12349@gmail.com
Google Location History
4/14/2023  1:00 AM to 3:00 AM



Mtorres.12349@gmail.com
Google Location History
4/14/2023  3:00 AM to 4:00 AM



Mtorres.12349@gmail.com
Google Location History
4/14/2023  4:00 AM to 8:00 AM



Mtorres.12349@gmail.com
Google Location History
4/14/2023  8:00 AM to 12:00 PM



7

Mtorres.12349@gmail.com
Google Location History
4/14/2023  12:00 PM to 4:00 PM



Mtorres.12349@gmail.com
Google Location History
4/14/2023  4:00 PM to 6:49 PM



8

11.      The FBI submitted an exigent request to Verizon for subscriber information for the cellular account number 224-406-4464. This number was associated with EDUARDO G. TORRES both in Accurint and from the Google account information listing the subscriber as Maria Torres at the same address in Waukegan, IL. According to the Chicago Department of Motor Vehicles, Maria Torres's DOB is xx/xx/1969.[5] Law enforcement contacted Maria Torres at the Waukegan address and confirmed that she is TORRES's mother. Location information provided by Verizon for cellular account number 224-406-4464 also showed the same path of travel as the Google account data showed. A combined image of the Verizon and Google data shows both the Google account and the Verizon account located within the vicinity of J.R.'s residence between 4:00 a.m. and 6:00 a.m. on April 14, 2023:



---

[5] The full date of birth is known to me, but I have not included it to protect personal identifying information.

12. As of 6:49 p.m. on April 14, 2023, the Google account gave the following location within the city of Waukegan, IL:



13. An Illinois driver's license for EDUARDO G. TORRES shows an individual of similar appearance to the male from the video:

10



14. From the late hours of April 14, 2023, to the early morning hours of April 15, 2023, cellular number 224-406-4464 continued to ping within the vicinity of the known Waukegan, IL address for EDUARDO G. TORRES. In the early morning hours of April 15, 2023, Agents approached the residence and observed individuals outside of the residence who identified themselves as family members of TORRES. TORRES and J.R. were seated in a vehicle in the driveway.

15. Upon making contact with TORRES, Agents called 224-406-4464, and heard the phone ring in TORRES's pocket, which he picked up. Agents seized the device, which was a Google Pixel 2 phone. Google Pixel phones are not manufactured in Michigan. Agents read TORRES his *Miranda* rights and interviewed him. TORRES admitted that he was communicating with J.R. on Snapchat with the purpose of driving to Michigan to see her to engage in sexual intercourse. He stated that he had not met her in person prior to April 14, 2023. TORRES admitted that he traveled to Michigan to pick up J.R. and that he had sexual intercourse with J.R. twice,

including once in the woods near J.R.'s residence in Berrien Springs, Michigan. TORRES stated that he waited until J.R.'s mother left for work to pick up J.R. After TORRES and J.R. had sexual intercourse, he admitted that he drove her across state lines to his home in Waukegan, Illinois.

16. Additionally, TORRES admitted to producing three videos of himself and J.R. having sexual intercourse and that he sent those videos to J.R.'s Snapchat account. A portion of one of the videos has been recovered by law enforcement after J.R.'s sister located the video (described above) on J.R.'s Snapchat account. TORRES admitted that he believed that J.R. was 13 years old. TORRES admitted that he had a laptop at his residence on which he had viewed child sexual abusive materials in the past. Agents also seized the computer. TORRES further admitted to talking to others who he believed were minors on Snapchat and stated that J.R. was the first he had met in person. Based on the location data evidence, the Snapchat video evidence, and TORRES's statements, including that the first time he met J.R. in person was on April 14, 2023, the video of sexual intercourse was produced in Berrien County in the Southern Division of the Western District of Michigan when he had sex with J.R. in the woods near her residence. TORRES was subsequently arrested.

17. On April 15, 2023, the government filed a criminal complaint against TORRES for violations of 18 U.S.C. §§ 2251(a) (production of child pornography); 2252A(a)(5)(B) (possession of child pornography); 2423(a) (transportation of a minor); and 2423(b) (travel with intent to engage in illicit sexual activity). (1:23-mj-00162-RSK PageID.2).

**BACKGROUND RELATING TO GOOGLE AND RELEVANT TECHNOLOGY**

18. Based on my training and experience, I know that cellular devices, such as mobile telephone(s), are wireless devices that enable their users to send or receive wire and/or electronic

communications using the networks provided by cellular service providers. Using cellular networks, users of many cellular devices can send and receive communications over the Internet.

19. I also know that many devices, including but not limited to cellular devices, have the ability to connect to wireless Internet ("wi-fi") access points if the user enables wi-fi connectivity. These devices can, in such cases, enable their users to send or receive wire and/or electronic communications via the wi-fi network. A tablet such as an iPad is an example of a device that may not have cellular service but that could connect to the Internet via wi-fi. Wi-fi access points, such as those created through the use of a router and offered in places like homes, hotels, airports, and coffee shops, are identified by a service set identifier ("SSID") that functions as the name of the wi-fi network. In general, devices with wi-fi capability routinely scan their environment to determine what wi-fi access points are within range and will display the names of networks within range under the device's wi-fi settings.

20. Based on my training and experience, I also know that many devices, including many cellular and mobile devices, feature Bluetooth functionality. Bluetooth allows for short-range wireless connections between devices, such as between a device such as a cellular phone or tablet and Bluetooth-enabled headphones. Bluetooth uses radio waves to allow the devices to exchange information. When Bluetooth is enabled, a device routinely scans its environment to identify Bluetooth devices, which emit beacons that can be detected by devices within the Bluetooth device's transmission range, to which it might connect.

21. Based on my training and experience, I also know that many cellular devices, such as mobile telephones, include global positioning system ("GPS") technology. Using this technology, the device can determine its precise geographical coordinates. If permitted by the user, this information is often used by apps installed on a device as part of the apps' operation.

22. Based on my training and experience, I know that Google collects and retains location data from Android-enabled devices when a Google account user has enabled Google location services. Google can also collect location data from non-Android devices if the device is registered to a Google Account and the user has location services enabled.

23. Based on my training and experience, I know that Google offers numerous apps and online-based services, including messaging and calling (*e.g.,* Gmail, Hangouts, Duo, Voice), navigation (Maps), search engine (Google Search), and file creation, storage, and sharing (*e.g.*, Drive, Keep, Photos, and YouTube).  Many of these services are accessible only to users who have signed in to their Google accounts.  An individual can obtain a Google account by registering with Google, and the account identifier typically is in the form of a Gmail address (*e.g.*, example@gmail.com).  Other services, such as Maps and YouTube, can be used with limited functionality without the user being signed in to a Google account.

24. Based on my training and experience, I also know Google offers an Internet browser known as Chrome that can be used on both computers and mobile devices.  A user has the ability to sign-in to a Google account while using Chrome, which allows the user's bookmarks, browsing history, and other settings to be uploaded to Google and then synced across the various devices on which the subscriber may use the Chrome browsing software, although Chrome can also be used without signing into a Google account.  Chrome is not limited to mobile devices running the Android operating system and can also be installed and used on Apple devices and Windows computers, among others.

25. Based on my training and experience, I know that, in the context of mobile devices, Google's cloud-based services can be accessed either via the device's Internet browser or via apps offered by Google that have been downloaded onto the device.  Google apps exist

for, and can be downloaded to, devices that do not run the Android operating system, such as Apple devices.

26.  According to my training and experience, as well as open-source materials published by Google, I know that Google offers accountholders a service called "Location History," which authorizes Google, when certain prerequisites are satisfied, to collect and retain a record of the locations where Google calculated a device to be based on information transmitted to Google by the device.  That Location History is stored on Google servers, and it is associated with the Google account that is associated with the device.  Each accountholder may view their Location History and may delete all or part of it at any time.

27.  Based on my training and experience, I know that the location information collected by Google is stored within an account's Location History and is derived from sources including GPS data, cellsite/tower information and Wi-Fi access points and Bluetooth beacons within range of the device.  Google uses this information to calculate the device's estimated latitude and longitude, which varies in its accuracy depending on the source of the data.  Google records the margin of error for its calculation as to the location of a device as a meter radius, referred to by Google as a "maps display radius," for each latitude and longitude point. I know that Google uses this information for location-based advertising and location-based search results and stores such data in perpetuity unless it is manually deleted by the user.

28.  Based on open-source materials published by Google and my training and experience, I know that Location History is not turned on by default.  A Google accountholder must opt-in to Location History and must enable location reporting with respect to each specific device and application on which they use their Google account in order for that usage to be recorded in Location History.  A Google accountholder can also prevent additional Location

History records from being created at any time by turning off the Location History setting for their Google account or by disabling location reporting for a particular device or Google application. When Location History is enabled, however, Google collects and retains location data for each device with Location Services enabled, associates it with the relevant Google account, and then uses this information for various purposes, including to tailor search results based on the user's location, to determine the user's location when Google Maps is used, and to provide location-based advertising. As noted above, the Google accountholder also has the ability to view and, if desired, delete some or all Location History entries at any time by logging into their Google account or by enabling auto-deletion of their Location History records older than a set number of months.

29.     Location data, such as the location data in the possession of Google in the form of its users' Location Histories, can assist in a criminal investigation in various ways. As relevant here, I know based on my training and experience that Google has the ability to determine, based on location data collected and retained via the use of Google products as described above, devices that were likely in a particular geographic area during a particular time frame and to determine which Google account(s) those devices are associated with. Among other things, this information can indicate that a Google accountholder was near a given location at a time relevant to the criminal investigation by showing that his/her device reported being there.

30.     Additionally, location information can be digitally integrated into image, video, or other computer files associated with a Google account and can indicate the geographic location of the account's user at a particular date and time (e.g., digital cameras, including on cellular telephones, frequently store GPS coordinates indicating where a photo was taken in the "metadata" of an image file).

31.     Based on my training and experience, I know that when individuals register with Google for an account, Google asks subscribers to provide certain personal identifying information.  Such information can include the subscriber's full name, physical address, telephone numbers and other identifiers, alternative email addresses, and, for paying subscribers, means and source of payment (including any credit or bank account number).  In my training and experience, such information may constitute evidence of the crimes under investigation because the information can be used to identify the account's user or users.  Based on my training and my experience, I know that even if subscribers insert false information to conceal their identity, this information often provide clues to their identity, location, or illicit activities.

32.     Based on my training and experience, I also know that Google typically retains and can provide certain transactional information about the creation and use of each account on its system. This information can include the date on which the account was created, the length of service, records of login (*i.e.,* session) times and durations, the types of service utilized, the status of the account (including whether the account is inactive or closed), the methods used to connect to the account (such as logging into the account via the provider's website), and other log files that reflect usage of the account.  In addition, Google often has records of the Internet Protocol address ("IP address") used to register the account and the IP addresses associated with particular logins to the account.  Because every device that connects to the Internet must use an IP address, IP address information can help to identify which computers or other devices were used to access the account.

33.     Based on my training and experience, I know that Google retains latitude and longitude points created through the use of Google related software and systems present on a user's cellular device. I know that Google retains location data as records associated with the

17

travel of each cellular device for which Google based software and systems are used. Furthermore, this location data indicates the cellular device's points of travel with identified dates and times and can be associated with points of travel inside or outside of a geographical area for specified periods of time before and after traversing into or out of a geographical area.

## CONCLUSION

34. The location data requested in Attachments A and B will assist investigators by tracking the geolocation information associated with TORRES's Google account in the time immediately before, during, and after the events described herein.

35. This Court has jurisdiction to issue the requested warrant because it is "a court of competent jurisdiction" as defined by 18 U.S.C. § 2711. 18 U.S.C. §§ 2703(a), (b)(1)(A) & (c)(1)(A). Specifically, the Court is "a district court of the United States . . . that – has jurisdiction over the offense being investigated." 18 U.S.C. § 2711(3)(A)(i).

36. Because the warrant will be served on Google who will then compile the requested records at a time convenient to it, reasonable cause exists to permit the execution of the requested warrant at any time in the day or night.